## RED WING MALTING CO. v. WILLCUTS, Collector of Internal Revenue.

(District Court, D. Minnesota, Third Division. July 31, 1925.)

Internal revenue ⚖=9—Malting company held not entitled to make deduction for "obsolescence" of "good will" in computing income and excess profit taxes.

Revenue Act 1918, § 234 (Comp. St. Ann. Supp. 1919, § 6336⅛pp), allowing deduction of "reasonable allowance for obsolescence" of property used in trade or business, Departmental Regulation 45, art. 143, and Regulation 62, relate only to tangible property, and malting company, forced by prohibition legislation to discontinue business, *held* unauthorized, in computing income and excess profit taxes, to make deduction for obsolescence of good will; "good will" meaning good character or reputation earned by conduct of a business, and being property in sense of being a thing subject to damage and entitled to protection of law, but not property "used in a trade or business," within Revenue Act 1918, and "obsolescence" being defined as the condition or process of gradually falling into disuse.

At Law. Action by the Red Wing Malting Company against Levi M. Willcuts, Collector of Internal Revenue for the District of Minnesota. Judgment for defendant.

Plaintiff, the Red Wing Malting Company, a corporation, in this action is seeking to recover additional income and excess profits taxes imposed by the collector of internal revenue after a field audit of its books. The sole issue is whether plaintiff, which was forced to discontinue business by prohibition legislation, destroying the market for its product, was entitled in making its return to deduct a substantial amount for obsolescence of good will.

Oppenheimer, Dickson, Hodgson, Brown & Donnelly, of St. Paul, Minn., for plaintiff.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and T. Ellis Allison, of Washington, D. C., Sp. Atty., Bureau of Internal Revenue, for defendant.

MOLYNEAUX, District Judge. In considering the question here involved, it is remarkable and significant that, although many hundreds of breweries were forced to close down and retire from business in the year 1918, by reason of prohibition legislation, the plaintiff is unable to cite one instance where an allowance has been made for obsolescence of good will, in the sense in which it is here claimed, nor has the plaintiff cited a single instance of the kind in any other business. Plaintiff cites Treasury Department regulation 62 and regulation 45, art. 143, which provides as follows:

"When through some change in business conditions, the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as a loss for the year in which he takes such action, the difference between the cost, or, if acquired prior to March 1, 1913, the cost or fair market price or value as of that date, whichever is lower, of any assets so discarded (less any depreciation sustained and allowable as a deduction in computing net income) and its salvage value remaining. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property has been prematurely discarded, as for example, where an increase in the cost of or other change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, *or where new legislation directly or indirectly makes the continued profitable use of the property impossible.* This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories or to other than capital assets. The exception applies to buildings only when they are permanently abandoned or permanently devoted to a radically different use, and to machinery, only when its use as such is permanently abandoned. Any loss to be deductible under this exception must be charged off on the books and fully explained in returns of income."

Also Solicitor's Law Opinion 862, I, Cumulative Bulletin, p. 127, in which the question was presented as to the deduction allowable for obsolescence in the case of vineyards, the usefulness of which is impaired or destroyed in whole or in part by prohibition legislation, in which the department holds:

"(1) Where vineyards planted to wine grapes appear to be rendered useless for profitable operation as vineyards through the enactment of prohibition legislation, but the owners continue to cultivate them in the hope that some new and profitable use for the crop may be found, a reasonable deduction for obsolescence may be claimed. There being at this time no data available upon which a determination of what constitutes a reasonable deduction may be made, a tentative deduction of one-half the loss which would result from the total abandonment of

the property for vineyard purposes may be made in the return for the year in which the legislation was enacted, subject to adjustment when the success or failure of the experiment shall have been satisfactorily established.

"(2) Where vineyards devoted to the growing of wine grapes are, as a result of prohibition legislation, abandoned as vineyards and the vines and improvements incidental solely to grape growing are junked and the land employed in other uses, the loss directly resulting may be deducted in determining the net income of the owner, care being taken to exclude from the deduction the value of any improvements, such as installation of drainage or irrigation, fencing, breaking up of the soil, and similar improvements, which, while incidental to the planting of the vineyard, tend to permanently improve the ground for other uses. The allowance for obsolescence will be distributed over the period elapsing between the passage of the prohibition measure and the date when abandonment occurs.

"(3) In general, no deduction for obsolescence of obsoleteness is allowable in the case of land, but in exceptional cases, where the loss of usefulness through prohibition legislation is so great that the land practically becomes worthless, the taxpayer may, upon the proper showing, be allowed a reasonable deduction on that account for the land as well as for the vines and improvements. In this case the cost or value used as the basis of such deduction for obsolescence or obsoleteness may properly include the value of any improvements which when made were regarded as permanently improving the land and which have not heretofore been charged off as expenses. In the case where the entire deduction is claimed in a single year by reason of actual abandonment on account of obsoleteness of land, vines, and improvements, the amount of such deduction will be the difference between the value of March 1, 1913, if acquired prior to that date, or the cost, if acquired on or after that date, and the salvage or junk value, taking into account any deductions for obsolescence previously allowed. Where a reasonable allowance for obsolescence is claimed before actual abandonment, to be spread over a period of two or more years, care must be taken to eliminate from the sum used as the basis of the allowance any general decrease in the value of real estate due to other causes, such decrease being deductible only when definitely determined through sale.

"(4) Any return of income from vineyard property in which a deduction is claimed as a result of obsolescence must be accompanied with an affidavit setting forth fully the facts necessary to a determination of the loss properly chargeable to obsolescence under the rules above stated."

Referring to the foregoing opinion, counsel for plaintiff say in their brief:

"The department, in the Solicitor's Opinion just referred to, has applied the very rule which the taxpayer contends for in this case, namely: Where vineyards devoted to the growing of grapes are, as a result of prohibition legislation, abandoned as vineyards and the vines and improvements incidental solely to grape growing are junked and the land employed in other uses, the loss directly resulting may be deducted in determining the net income of the owner."

The loss there referred to as an allowable deduction is not the loss of good will, but the depreciation of the tangible assets of the property resulting from the cessation of the business, caused by prohibition legislation. The vineyards and land upon which they were grown were of less value by reason of prohibition legislation, and this loss of value of the tangible assets is the loss that is allowed to be deducted.

But that is not the kind of loss that the plaintiff is seeking here to recoup. He is not asking here for an allowance for the depreciation of the tangible assets of the plant. Whatever loss may have resulted to the plaintiff's tangible assets, to the buildings, machinery, etc., is an allowable deduction, but he has undoubtedly had the benefit of that deduction. In the above-quoted opinion, it is stated:

"No deduction for obsolescence or obsoleteness is allowable in the case of land, but in exceptional cases, where the loss of usefulness through prohibition legislation is so great that the land practically becomes worthless, the taxpayer may, upon the proper showing, be allowed a reasonable deduction on that account for the land as well as for the vines and improvements."

And this is referred to by the department as obsolescence. See paragraph 4 of the quotation above referred to.

It is very plain that the allowance referred to in the instance cited is for obsolescence of tangible property. There are many definitions of good will given by the courts, and in all of them it is recognized as property which may be assigned in connection with the business, and that good will has no meaning except in connection with a

continuing business. It has been defined as: "* * * The advantage or benefit which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein in consequence of the general public patronage and encouragement which it receives from *constant or habitual customers* on account of its local position or common celebrity or reputation for skill, affluence, punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices. This comprehensive definition has been cited with approval in numerous cases. An early decision defined it to be nothing more than the probability that the *old customers* would resort to the old place. But this definition, although frequently quoted, has been criticized as too narrow. In its broadest sense good will may be said to be reputation; but generally the definitions given by the courts *include as a leading element the probability that the customers of the old establishment will continue their patronage.*" 28 Corpus Juris, 729, 730.

"Good will has been defined as 'all that good disposition which customers entertain towards the house of business identified by the particular name or firm, and which may induce them to continue giving their custom to it.' There is nothing marvelous or mysterious about it. When an individual or a firm or a corporation has gone on for an unbroken series of years conducting a particular business, and has been so scrupulous in fulfilling every obligation, so careful in maintaining the standard of the goods dealt in, so absolutely honest and fair in all business dealings that customers of the concern have become convinced that their experience in the future will be as satisfactory as it has been in the past, while such customers' good report of their own experience tends continually to bring new customers to the same concern, there has been produced an element of value quite as important —in some cases, perhaps, far more important—than the plant or machinery with which the business is carried on. That it is property is abundantly settled by authority, and, indeed, is not disputed. That in some cases it may be very valuable property is manifest. The individual who has created it by years of hard work and fair business dealing usually experiences no difficulty in finding men willing to pay him for it, if he be willing to sell it to them. Legislation devised to restrict the accumulation of the fruits of industry may impair its value

by denying to its producer the right to enter into a contract enforceable at law not to interfere with its enjoyment by the purchaser, but, so long as any belief in human honesty remains, there will be found some persons willing to buy such property, the very existence of which implies honest business dealing in the past. And so long as it remains salable it is valuable." Washburn v. National Wall-Paper Co., 81 F. 17, at 20, 26 C. C. A. 312.

All of the allowable deductions are specified in the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛pp). When Congress adopted the words "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence," it is my opinion that the words "reasonable allowance for obsolescence" refer to tangible property and that an allowance for loss of good will is only admissible in so far as such allowance is reflected in the depreciation of the tangible property. The good will simply makes the plant more valuable, and it is therefore reflected in the value of the plant property or the plant as a property.

In my opinion the good will is not "property used in the trade or business," within the meaning of the Revenue Act. Good will is property in the sense of being a thing subject to damage and entitled to the protection of the law. Fine v. Lawless, 139 Tenn. 160, 201 S. W. 160, L. R. A. 1918C, 1045. Good will is the good character or good reputation which the conduct of the business has earned, and as such is valuable and entitled to the protection of the law; but in my opinion it is not property used in the business, but is the reputation of the business.

Webster defines "obsolescence" as the condition or process of gradually falling into disuse. As the good will declines, the business declines and becomes less valuable. In that sense the loss of good will is reflected in the property of the business, and in that sense the plaintiff has undoubtedly been given credit in valuing the tangible property of the plant.

The plaintiff owned and operated this business, subject to the right of the government to pass the prohibition laws, and the government is not responsible to those who were therefore forced out of business. The plaintiff is in the same position as if he had voluntarily ceased to do business and sold his plant for some other kind of business.